UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD KIRK BROWN,

Plaintiff,

v.

JAMES CORRIGAN et al.,

Defendants.

Case No. 2:26-cv-55

Honorable Paul L. Maloney

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*.

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Corrigan, Russo, Gobler, Gurnoe, Theut, King, Bosbourgs, Schier Schmidt, Securus Technologies, LLC, Tasson, and Unknown Parties "John Does" 1–10.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's motion to appoint counsel.

## **Discussion**

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at that facility and the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following URF staff: Warden James Corrigan, Head Nurse Danya Russo, Correctional Officer Unknown Lemmerman, Correctional Officer Unknown Stabile, Correctional Officer Unknown Gobler, Prison Counsel Unknown Gurnoe, Prisoner Counsel Megan Davidson, Hearing Officer Unknown Theut, Sergeant Unknown King, Sergeant Unknown Bosbourgs and Officers Unknown Parties "John Does" 1–10. He also sues Securus Technologies, LLC – JPay, LMF Librarian Unknown Schier Schmidt, and Douglas Tasson.

On July 30, 2024, Plaintiff was transferred to URF. (ECF No. 1-1, PageID.72.) On August 4, 2024, Plaintiff informed Defendant Corrigan that he had not received his personal property. (*Id.*) The following day, Plaintiff went to retrieve his belongings. (*Id.*) At that time, non-party Officer Bauers told Plaintiff to pack his personal property into a green bag, and to place whatever did not fit into the bag on a cart where it would be removed as contraband. (*Id.*) Officer Bauers told Plaintiff that, had Plaintiff not complained to Defendant Corrigan about his missing property, "this would not had happen [sic]." (*Id.*)

On August 13, 2024, Officer Bauers issued Plaintiff a misconduct report for possession of contraband concerning his confiscated personal property. (Misconduct Report, ECF No. 1-2,

PageID.70.) Defendant Stabile reviewed the misconduct report with Plaintiff on September 5, 2024. (*Id.*) Plaintiff refused to sign the report. (*Id.*)

On August 23, 2024, Defendant Lemmerman and non-party Officer Butler again took Plaintiff's property when Plaintiff moved to a different area of URF. (ECF No. 1-2, PageID.92–94.) Plaintiff claims that Defendant Lemmerman gave Plaintiff's confiscated property to other prisoners and created a "hostile environment" by calling Plaintiff and others "n*ggers." (ECF No. 1-1, PageID.21; ECF No. 1-2, PageID.76, 90, 94.)

On September 9, 2024, Defendant Davidson found Plaintiff guilty of the Class III misconduct for possession of contraband and ordered "counseling/reprimand." (Class II and III Misconduct Hearing Report, ECF No. 1-2, PageID.88.)

Prior to January 28, 2025, Defendant Russo discontinued Plaintiff's medication for vertigo. (ECF No. 1-1, PageID.24.) Plaintiff then slipped and fell on January 28, 2025. (*Id.*) Non-parties decided not to send Plaintiff to the hospital. (*Id.*)

On February 2, 2025, Plaintiff was attempting to seek medical help for injuries from his slip and fall when he was severely beaten by Defendants Bosbourgs and John Does 1–7, upon verbal orders by Defendants Corrigan and Russo. (Compl., ECF No. 1, PageID.4; ECF No. 1-1, PageID.30.) Non-parties witnessed the attack but did not intervene. (Compl., ECF No. 1, PageID.4.) Plaintiff claims that his medical needs were never met. (*Id.*, PageID.5.)

Plaintiff alleges that, on June 9, 2025, a non-party "was now stealing all of [Plaintiff's] property by trying to hold a hearing on [his] property 6 months later." (*Id.*, PageID.4.)

On September 3, 2025, Plaintiff submitted a Prison Rape Elimination Act (PREA) complaint against Defendant Russo. (ECF No. 1-1, PageID.20.)

On September 16, 2025, Plaintiff refused a health care call out. (ECF No. 1-1, PageID.31.) The following day, Plaintiff went to health care, where he was met by Defendant Russo. (*Id.*) Plaintiff states that Defendant Russo had turned the lights off and was "trying to act real sexy." (*Id.*) Plaintiff attempted to speak with Defendant Russo regarding his knee and hip conditions, when Defendant Gobler "pop[ped] out of the back area." (*Id.*) Defendants Russo and Gobler discussed having Plaintiff go to an area off camera "for the attack." (*Id.*, PageID.45.) Defendants King, Russo, Gobler, and John Does 8–10 then "inflict[ed] harm to [Plaintiff]," in an incident which began with Defendant King hitting and choking Plaintiff. (Compl., ECF No. 1, PageID.4.) Plaintiff claims that he was "set-up" by Defendants Corrigan and Russo. (*Id.*) Defendant Theut reviewed the video evidence of this incident when conducting a hearing. (*Id.*)

Plaintiff also alleges that Defendant Russo refused to treat Plaintiff's knee cap and hip conditions. (ECF No. 1-1, PageID.23–27, 30.)

In October 2025, Defendants Davidson and Gurnoe blocked both the sending and receipt of Plaintiff's mail. (*Id.*, PageID.45.). Plaintiff filed grievances concerning his legal mail, which were denied on appeal by Defendant Corrigan. (ECF No. 1-1, PageID.58, 64.)

In February 2026, following Plaintiff's transfer to LMF, Defendant Schier Schmidt refused to provide Plaintiff with documents and copies needed to file his complaint (ECF No. 1-1, PageID.9–11, 18–19), and Defendant Securus Technologies, LLC – JPay failed to return Plaintiff's photographs with his tablet (*Id.*, PageID.37).

Based on the foregoing allegations, Plaintiff seeks injunctive and monetary relief. (Compl., ECF No. 1, PageID.5.)

## II. Misjoinder

Plaintiff names more than 20 Defendants in his lists of parties and describes events spanning from August 2024 through February 2026, taking place at two MDOC facilities. At this

stage, the Court must address whether the Defendants and claims are properly joined in a single lawsuit.

**A. Improper Joinder**

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party.

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("Unrelated claims against different defendants belong in different

suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). A district judge necessarily has considerable discretion in applying Rules 18 and 20. The rules 'operate[ ] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first.").

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D

> failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Furthermore, he would avoid the consequences of filing at least three actions with all claims dismissed as meritless, frivolous, or for failure to state a claim. Courts are obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, the first series of events described in Plaintiff's complaint began in August 2024 and concerns the deprivation of Plaintiff's personal property. (ECF No. 1-1, PageID.72.) Plaintiff alleges that Defendant Stabil reviewed the misconduct report issued by non-party Officer Bauers concerning the removal of Plaintiff's property as contraband, Defendant Lemmerman gave Plaintiff's property to other prisoners, and Defendant Davidson found Plaintiff guilty of a Class III misconduct for possession of contraband. Plaintiff may proceed with all claims that he has against Defendants Stabil, Lemmerman, and Davidson. However, Plaintiff has not alleged any facts that would support an inference that Plaintiff's claims against the remaining Defendants arise out of this same transaction or occurrence. Plaintiff has, therefore, improperly joined Defendants Corrigan, Russo, Gobler, Gurnoe, Theut, King, Bosbourgs, Schier Schmidt, Securus Technologies, LLC, Tasson, and Unknown Parties "John Does" 1–10.

**B. Remedy**

Because the Court has concluded that Plaintiff has improperly joined Defendants Corrigan, Russo, Gobler, Gurnoe, Theut, King, Bosbourgs, Schier Schmidt, Securus Technologies, LLC, Tasson, and Unknown Parties "John Does" 1–10, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff's allegations provide no indication that the statute of limitations has or will run on Plaintiff's claims against misjoined Defendants Corrigan, Russo, Gobler, Gurnoe, Theut, King, Bosbourgs, Schier Schmidt, Securus Technologies, LLC, Tasson, and Unknown Parties "John Does" 1–10. Thus, Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against misjoined Defendants Corrigan, Russo, Gobler, Gurnoe, Theut, King, Bosbourgs, Schier Schmidt, Securus Technologies, LLC, Tasson, and Unknown Parties "John Does" 1–10 are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Corrigan, Russo, Gobler, Gurnoe, Theut, King, Bosbourgs, Schier Schmidt, Securus Technologies, LLC, Tasson, and Unknown Parties "John Does" 1–10 because they are misjoined. The Court will dismiss Plaintiff's claims against Defendants Corrigan, Russo, Gobler, Gurnoe, Theut, King, Bosbourgs, Schier Schmidt, Securus Technologies, LLC, Tasson, and Unknown Parties "John Does" 1–10 without prejudice to the institution of a new, separate lawsuit or lawsuits.[1]

---

[1] If Plaintiff wishes to proceed with his claims against one or more of the misjoined Defendants, he may do so by filing new civil action(s) on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at a particular correctional facility does mean that all claims arising out of these events are properly joined.

**III. Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Official Capacity Claims**

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.3.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks injunctive and monetary relief. (Compl., ECF No. 1, PageID.5.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately

called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Importantly, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at URF, which is where he avers that Defendants Stabil, Lemmerman, and Davidson are employed. Because Plaintiff is no longer at URF, he cannot maintain his claims for injunctive relief against these Defendants in their official capacities.

For all the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities. Therefore, Plaintiff's official capacity claims will be dismissed.

**B. First Amendment Retaliation Claims**

Plaintiff alleges that non-party Officer Bauers told Plaintiff that his property would not have been taken had Plaintiff not complained to Defendant Corrigan. Defendant Stabil then reviewed the misconduct report issued by Officer Bauers concerning the removal of Plaintiff's property as contraband, Defendant Lemmerman gave Plaintiff's property to other prisoners, and

Defendant Davidson found Plaintiff guilty of a Class III misconduct for possession of contraband. The Court will construe Plaintiff's complaint as raising a claim of First Amendment retaliation.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that non-party Officer Bauers told Plaintiff that he would not have taken Plaintiff's personal property as contraband if Plaintiff had not complained to Defendant Corrigan. Even assuming that Plaintiff's complaint to Defendant Corrigan was First Amendment protected conduct, Plaintiff does not allege sufficient facts to plausibly suggest that Defendants Stabil, Lemmerman, and Davidson shared Officer Bauers' motivation.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987));

*see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x. 579, 579–80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Here, Plaintiff has not alleged any *facts* that would plausibly suggest that Defendants Stabil, Lemmerman, and Davidson knew of Plaintiff's complaint to Defendant Corrigan, let alone that they were motivated to act by Plaintiff's First Amendment protected conduct. Accordingly, the Court will dismiss Plaintiff's claims of First Amendment retaliation.

### C. Fourteenth Amendment Due Process Claims

#### 1. Deprivation of Property

Plaintiff alleges that each Defendant played a role in the confiscation of Plaintiff's personal property. These claims will be liberally construed as claims for violation of Plaintiff's Fourteenth Amendment right to due process. However, any such due process claims will be dismissed as barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth

Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

The Court notes that numerous state post-deprivation remedies are available to Plaintiff. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Nov. 13, 2023). Second, aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective May 20, 2024). And third, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.

Here, Plaintiff does not claim that his state post-deprivation remedies are inadequate. Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment claims concerning the deprivation of his personal property.

**2. Equal Protection Claims**

Plaintiff claims that his property was taken from him "because of [his] color" (ECF No. 1-2, PageID.75), which the Court will construe as a claim for deprivation of equal protection.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must plead facts to show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated."

*Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff's complaint contains no facts or allegations to support his equal protection claim. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory, which fails to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's equal protection claim will be dismissed.

**3. Misconduct Charges**

As to any due process claims concerning Plaintiff's Class III misconduct charge and conviction, the Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). A prisoner's ability to challenge a prison misconduct conviction therefore depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. at 484, 487.

The allegations of Plaintiff's complaint do not plausibly suggest that Plaintiff's misconduct convictions affected any interests that would fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship.

First, Plaintiff alleges that he received a conviction for a Class III misconduct charge resulting in "counseling/reprimand." (Class II and III Misconduct Hearing Report, ECF No. 1-2, PageID.88.) The Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *Id.* ¶ DDDD. Here, because Plaintiff's complaint alleges only a Class III misconduct charge, Plaintiff's misconduct charge could not have resulted in the loss of good time credits.

Second, Plaintiff has not alleged facts that would plausibly suggest that he suffered a "significant and atypical deprivation." In assessing the significance of Plaintiff's sanctions, the Court is guided by precedent related to the most significant sanction: segregation. The Supreme Court has held that even placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468. Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484.

Here, Plaintiff alleges that he received a reprimand or counseling because of the conviction, which is a far cry from segregation. Accordingly, even taking Plaintiff's allegations as true, Plaintiff cannot state a claim for violation of his Fourteenth Amendment right to procedural due process.

#### 4. Violation of MDOC Policy

Plaintiff also alleges that Defendants violated MDOC policy. To the extent that Plaintiff's Fourteenth Amendment claim may be construed as a claim for violation of MDOC policy, Plaintiff's assertions fail to state a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law or prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Additionally, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Accordingly, any § 1983 claims premised upon violations of MDOC policy and procedure will be dismissed.

### D. Eighth Amendment Claims

Plaintiff claims that Defendant Lemmerman verbally harassed him, creating a hostile environment. The Court will construe Plaintiff's allegation as raising an Eighth Amendment claim of cruel and unusual punishment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene

society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

The Sixth Circuit has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (noting that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief" (citing *Ivey*, 832 F.2d at 955)); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (affirming district court's conclusion that verbal harassment in the form of a threatened sexual assault "was not punishment that violated Miller's constitutional rights" (citing *Ivey*, 832 F.2d at 955)); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree.").

Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim.

## IV. Motion to Appoint Counsel

In his complaint, Plaintiff requests "a lawyer to help with [his] case." (Compl., ECF No. 1, PageID.5.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–605 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. The Court will therefore deny Plaintiff's request for appointment of counsel.

## **Conclusion**

Pursuant to Rule 21, the Court determines that Defendants Martino and Stallman will be dropped as misjoined. Defendants Corrigan, Russo, Gobler, Gurnoe, Theut, King, Bosbourgs, Schier Schmidt, Securus Technologies, LLC, Tasson, and Unknown Parties "John Does" 1–10 because they are misjoined. The Court will dismiss Plaintiff's claims against Defendants Corrigan, Russo, Gobler, Gurnoe, Theut, King, Bosbourgs, Schier Schmidt, Securus Technologies, LLC, Tasson, and Unknown Parties "John Does" 1–10 without prejudice to the institution of a new, separate lawsuit or lawsuits.

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny Plaintiff's request for appointment of counsel.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not

be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the full $605.00 appellate filing fee pursuant to § 1915(b)(1). *See McGore*, 114 F.3d at 610-11.

An order and judgment consistent with this opinion will be entered.

Dated: September 2, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge